UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:25-cr-00040 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| PHILLIP MORELAND, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

Defendant Phillip Moreland ("Moreland") moves the Court to suppress all evidence obtained pursuant to various search warrants and in connection with an attempted traffic stop. (Doc. 40.)  The government responded in opposition (Doc. 42), and Moreland replied (Doc. 43).

Moreland has twice stated he does not request an evidentiary hearing.  "An evidentiary hearing is required only when the defendant has set forth contested issues of fact that bear upon the legality of the search."  *United States v. Goodwin*, 552 F. App'x 541, 548 (6th Cir. 2014); *see also United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019).  Moreland acknowledges the issue presented here is strictly a legal one: whether the August 26, 2024 search warrant authorizing the installation of an electronic data tracking device was properly supported by probable cause and, if not, whether all evidence obtained pursuant to any later-authorized search warrants based on similar affidavits or other investigative actions mandate exclusion as "fruit of the poisonous tree."  (*See* Doc. 40 at 148; Doc. 43 at 702.)[1]  As Moreland recognizes, the legal question put to

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

the Court does not require an evidentiary hearing. *United States v. Moore*, 999 F.3d 993, 999 (6th Cir. 2021).

For the reasons stated herein, the Motion to Suppress is DENIED in full.

## I. BACKGROUND

Moreland seeks judicial review of all search warrants obtained during the investigation leading up to his indictment for controlled substances offenses. (Doc. 40 at 148-58.) Moreland asserts that search warrant affidavits presented in August 2024 were not supported by probable cause.[2] (*Id.* at 152-53.) And because all later-authorized search warrants were supported by affidavits premised on the same allegations and therefore similarly deficient, Moreland urges that all evidence obtained pursuant to those search warrants or related investigative measures must be excluded. (*Id.* at 153-55.)

No affidavits were attached to the motion. (*See* Doc. 40.) In reply, Moreland attached two affidavits: one for GPS monitoring, dated August 26, 2024, and another for the search of his East 72nd Street residence, dated February 18, 2025. (Docs. 43, 43-1, 43-2.) Because Moreland did not initially specify which search warrants were challenged, the government submitted all search warrants presented in this case.[3] (*See* Docs. 42-1-19, 42-22-24.) It also presented reports related to a December 2024 traffic stop. (*See* Docs. 42-20, 42-21.)

---

[2] The first search warrant appears to have been obtained on July 26, 2024, but Moreland has not stated any challenge to this search warrant. (*See* Doc. 40.)

[3] The government included search warrant affidavits specific to another individual, D.E., and cellular phone number ending in x1737. The materials provided do not specify to whom the cellular telephone number is assigned. The numbers identified as belonging to Moreland do not end in x1737. (*See* Doc. 42-1.) Because Fourth Amendment rights cannot be asserted on behalf of another, *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Rakas v. Illinois,* 439 U.S. 128, 133-34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)), and because Moreland has not demonstrated "a reasonable expectation of privacy" in the things seized pursuant to those

On August 26, 2024, Richard Berta, a Task Force Officer ("TFO") with the Drug Enforcement Agency ("DEA") obtained a search warrant authorizing the installation of an electronic tracking device ("GPS device") on Moreland's white, BMW SUV ("the Vehicle") for a period of 45 days.  (Doc. 42-3.)  On October 10, 2024, TFO Berta obtained an extension. (Doc. 42-7.)  In November 2024, TFO Berta obtained a third extension.[4]  (Doc. 42-13.)

On December 2, 2024, officers attempted to stop Moreland as he was driving on Fleet Avenue in Cleveland, Ohio.  (*See* Doc. 43-20; Doc. 43-21.)  Moreland successfully evaded the officers after abandoning his Vehicle.  (*Id.*)  In flight, he discarded a jacket and a bag of pills. (Doc. 42-20 at 572; Doc. 42-23 at ¶ 116.)  In the Vehicle, officers found a loaded firearm, a large bag of powder, and two cell phones.  (*Id.*)  On December 4, 2024, law enforcement officers obtained a search warrant for the cell phones Moreland abandoned when he fled.  (Doc. 42-22.)

On February 18, 2025, law enforcement obtained a warrant to search Moreland's East 72nd Street residence.  (Doc. 42-23.)

## II.  LAW AND ANALYSIS

### A.  Search Warrants for Electronic Tracking Devices[5]

The Fourth Amendment mandates that search warrants be supported by probable cause. U.S. CONST. amend. IV.  Probable cause exists if there is "a fair probability that evidence of a

---

warrants, *United States v. Smith,* 263 F.3d 571, 582 (6th Cir. 2001), the Court will not consider government exhibits 42-5, 42-6, 42-8, 42-10, 42-11, and 42-15.

[4] The date on the copy provided by the government is unreadable.  (Doc. 42-13.)

[5] The government also obtained nine search warrants for Moreland's cellular location data.  (*See* 42-1, 42-2, 42-4, 42-9, 42-12, 42-14, 42-16, 42-17, and 42-18.)  The Fourth Amendment is not implicated, and search warrants are not required for cellular location data.  *See United States v. Rios*, 830 F.3d 403, 428-29 (6th Cir. 2016); *United States v. Skinner*, 690 F.3d 772, 777 (6th Cir. 2012); *see also United States v. Riley*, 858 F.3d 1012, 1018 (6th Cir. 2017) (per curiam).  The Court will not include in Moreland's general challenge to "all" search warrant affidavits those cautiously presented in support of cellular location data.

crime will be located on the premises of the proposed search." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). This "is not a difficult standard to meet." *United States v. Whitlow*, 134 F 4th 914, 919 (6th Cir. 2025) (citing *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc); *see also Kaley v. United States*, 571 US 320, 338, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014) (probable cause "is not a high bar").

In determining whether a search warrant is supported by probable cause, review is limited to the "four corners of the affidavit." *United States v. Lewis*, 81 F.4th 640, 646 (6th Cir. 2023) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). "[A] warrant's validity should not turn on whether it is supported by an 'actual showing' of criminal activity at the targeted location," but instead on "whether officers provided direct or circumstantial evidence to create 'more than a mere suspicion' that contraband will be found at the location in question." *Sanders*, 106 F.4th at 462 (quoting *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019); *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)). "[C]ourts should not undertake a *de novo* review of the sufficiency of an affidavit . . . ." *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986) (citation omitted), *cert. denied*, 479 U.S. 1092, 107 S. Ct. 1305, 94 L. Ed. 2d 160 (1987). Search warrant affidavits are not scrutinized in a "hypertechnical" or "line-by-line manner," but rather, reviewed to determine whether, given the totality of the information provided, there is some reliable evidence connecting criminal activity to a place to be searched. *Sanders*, 106 F.4th at 463 (quoting *Christian*, 925 F.3d at 311); *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016).

When reviewing a magistrate judge's determination of probable cause, the district court must simply ensure there was a "substantial basis" for concluding probable cause existed.

*United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)); *see also United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 92-93 (6th Cir. 1985)). A magistrate judge's probable cause determination "should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (citation omitted).

Fourth Amendment protections extend to electronic tracking devices used to monitor a vehicle's location and movement. *United States v. Jones*, 565 U.S. 400, 404, 132 S. Ct. 945, 181 L. Ed. 2d 911 (2012). As such, GPS devices, must be authorized by a warrant. *Id.*

The government obtained three GPS warrants for Moreland's vehicle, with the first such warrant obtained on August 26, 2024. (*See* Docs. 42-3, 42-7, 42-13.) Each search warrant permitted the installation of a tracking device for a period of 45 days. (*Id.*) Later search warrants were obtained on October 10, 2024, and in November 2024. (Docs. 42-7, 42-13.) The affidavits sworn by TFO Berta set forth his professional training and experience, especially as it related to investigating drug trafficking activity. (*See* Doc. 42-3 at ¶¶ 3-7, 10-11, 13.) Particular to drug trafficking operations utilizing a pill press, he explained that Firmapress is binding agent that, when combined and pressed with an illicit substance like fentanyl, can create pills that look like oxycodone. (*Id.* at ¶ 10.) There are "few legitimate reasons for individuals to use a pill press," and while Firmapress can be obtained in the open market, it serves no purpose for a business engaged in landscaping or construction equipment. (*Id.* at ¶¶ 10-11, 13.) Each of these affidavits contained the same general information. (*See* Doc. 42-7 at ¶¶ 3-7, 10-11, 13; Doc. 42-13 at ¶¶ 3-7, 10-11, 13.)

Because Moreland's argument hinges on whether the first affidavit for GPS tracking was supported by probable cause, the pertinent allegations in that affidavit are summarized below.

On July 11, 2024, a Texas distributor notified law enforcement officers that an individual ordered 25 kilograms of Firmapress white.  (Doc. 42-3 at ¶ 12.)  Moreland was the named purchaser.  (*Id.*)  He provided his email address, verified telephone number, and an address on East 72nd Street, Cleveland, Ohio.  (*Id.*)  Although Firmapress is available to the public via online sales, it is widely known among law enforcement agencies as a binding agent mixed with a controlled substance (e.g., fentanyl or methamphetamine).  (*Id.* at ¶¶ 10, 11.)  When pressed together in a pill press, one can create laced pills that are colored and marked to appear like 30-milligram oxycodone tablets.  (*Id.*)

Investigators turned to open-source databases, in part, to determine if Moreland was affiliated with a business that would require Firmapress.  (*Id.* at ¶ 13.)  Moreland was listed as the statutory agent for Moreland Landscaping and Construction INC, at an address on East 130th Street, Cleveland, Ohio.  (*Id.*)  Firmapress is not used by landscaping or construction companies, but drug traffickers may create businesses to create the illusion Firmapress is being purchased for a legitimate reason.  (*Id.*)  Moreland did not direct the shipment to the listed business address on East 130th Street, but rather to his East 72nd Street residence.  (*Id.*)  Moreland has a criminal history for drug-related offenses.  (*Id.* at ¶ 14.)  Investigators promptly began surveillance on the East 72nd Street address.  (*Id.* at ¶ 16.)

On July 23, 2024, Moreland was seen at the East 72nd Street address.  (*Id.* at ¶¶ 16, 17.)  His Vehicle was parked in the driveway.  (*Id.* at ¶¶ 1, 16, 17.)  At approximately 4:30 pm, Moreland got in his car and drove to a McDonalds where he parked in the rear corner of the parking lot.  (*Id.* at ¶¶ 26, 27.)  He never got out of his car.  (*Id.* at ¶ 27.)  Instead, an individual got into Moreland's car for approximately one minute.  (*Id.*)  The individual sped away after.

(*Id.* at ¶ 28.)  Neither went into the restaurant or used the drive-thru.  (*Id.*)  On August 2, 2024, officers observed short-term traffic at Moreland's East 72nd Street address.  (*Id.* at ¶¶ 34-36.)

Shortly thereafter, Moreland accompanied a convicted felon to a liquor store.  (*Id.* at ¶¶ 38-40.)  Moreland and this individual then drove back to Moreland's East 72nd Street address where Moreland went into the house and returned to the individual's vehicle with a small box officers saw Moreland pull from his Vehicle earlier that day.  (*Id.* at ¶¶ 41-42.)  Additional short-term traffic occurred at Moreland's residence that day.  (*Id.* at ¶ 42.)

Moreland eventually left the home in his Vehicle at the same time as another person who had been parked at Moreland's residence.  (*Id.* at ¶ 47.)  Both drove away while engaging in countersurveillance measures, namely speeding and driving into oncoming lanes of traffic.  (*Id.* at ¶ 48.)  On August 5, 2024, officers saw a light gray SUV arrive at Moreland's East 72nd Street address and park behind Moreland's Vehicle.  (*Id.* at ¶¶ 52, 56.)  The individual, later identified as someone known by Cleveland Division of Police to engage in drug trafficking, drove away approximately two minutes after arriving at Moreland's residence.  (*Id.* at ¶¶ 56, 57.)  As the individual drove away, he traveled at high rates of speed and violated traffic enforcement laws.  (*Id.* at ¶ 57.)  Based on TFO Berta's training and experience, driving away in such a fashion is meant to avoid detection by law enforcement even if law enforcement is not seen in the area.  (*Id.*)

In challenging probable cause, Moreland focuses largely on references to his trip to a liquor store and a McDonald's.  (Doc. 40 at 153.)  To him, these were harmless interactions that, at best, amounted to "mere suspicion," not probable cause.  (*Id.*)  Moreland's piecemeal arguments urge what the Court cannot do – engage in line-by-line scrutiny that does not account for the entirety of the affiant's attestations.  *Sanders*, 106 F.4th at 463.  In so doing, Moreland

fails to address certain of TFO Berta's other statements, namely his training and experience and the inferences drawn therefrom; the large, inexplicable purchase of Firmapress; and instances of short-term traffic at Moreland's East 72nd Street address.

The affidavit did not need to spell out that a confirmed drug transaction occurred in Moreland's Vehicle.  To pass muster, it needed to contain facts sufficient to indicate, by a "'fair probability,'" that evidence of a crime will be obtained by utilizing the GPS device.  *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990), *cert. denied*, 498 U.S. 837, 111 S. Ct. 109, 112 L. Ed. 2d 79 (1990) (quoting *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir.1983) (per curiam)).  That is plainly the case here.  The affidavit set forth observations Moreland was using the Vehicle to meet others, whether at his home or at other locations, for brief, in-person meetings followed by examples of erratic driving.  All of this his occurred after Moreland bought Firmapress with no known reason for doing so.

The initial GPS search warrant affidavit, and the two that followed, were plainly supported by probable cause.

### B.      Attempted Traffic Stop on December 2, 2024

The Fourth Amendment guards against unreasonable seizures.  *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967).  "An ordinary traffic stop by a police officer is a 'seizure' within the meaning of the Fourth Amendment."  *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979)).  "[A]n officer must have probable cause to make a stop for a civil infraction," such as a traffic violation, "and reasonable suspicion of an ongoing crime to make a stop for a criminal violation."  *United States v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016) (citation omitted); *United States v. Anderson*, 458 F. App'x 440, 442 (6th Cir. 2012) (holding license-plate violation provided probable cause to make a traffic stop); *Whren v. United*

*States*, 517 U.S. 806, 819, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (driver's failure to use a turn signal provided probable cause to justify a traffic stop); *United States v. Davis*, No. 22-CR-195, 2023 U.S. Dist. LEXIS 29888, 2023 WL 2154688, at *4 (S.D. Ohio Feb. 22, 2023) (failure to stop at stop bar, a violation of O.R.C. § 4511.13, provided probable cause to conduct a traffic stop).

"No seizure occurs when there is a pursuit of a person attempting to evade police custody . . . ." *United States v. Caldwell*, No. 99-6301, 238 F.3d 424 (Table), 2000 WL 1888682, at *7 (6th Cir. Dec. 19, 2000) (citing *California v. Hodari D.*, 499 U.S. 621, 627, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)).  And "any evidence discarded or abandoned in the chase is not the fruit of a seizure." *Id.*; *United States v. Seymour*, 739 F.3d 923, 927-29 (6th Cir. 2014) (no seizure until the suspect fleeing a traffic stop was detained and the firearm discarded in the process properly seized and considered in officer's probable cause determination).

The government presented unchallenged information about the attempted traffic stop.

> While on patrol in a marked vehicle, I was assisting an outside agency in conducting a traffic stop on a white BMW 330I with registration plate JZP 9081.  A traffic stop was initiated on the vehicle for a speed violation 85/60, and illegal window tint.  The vehicle was observed to be traveling south bound on Interstate 77 and then exited at the Fleet Avenue exit.  The vehicle then proceeded to turn east onto Fleet Avenue.  A traffic stop was then initiated for the violations at the intersection of Fleet Avenue and E. 55th Street.

> The vehicle was observed to initially stop, and then began to drive slowly on Fleet Avenue.  Trooper Hershman Unit 0481 drove next to the vehicle in order to get them to stop.  The vehicle proceeded to go around the marked patrol car and continue to drive slowly for a short distance.  Trooper Hershman and I were able to box in the vehicle.  The driver was observed to be reaching around the vehicle and was given commands to put his hands up.

***

> The driver was given orders to exit the vehicle with his hands up.  The door opened, and the driver began to exit his vehicle.  The driver was asked if anyone was in the vehicle, to which he stated no.  The driver then placed his vehicle in park and exited.  The driver was initially complying with commands given.  The driver then stated "y'all crazy" and began to flee on foot south from the roadway.  The driver was given commands to stop, but he did not comply.

(Doc. 42-20 at 572.)

As he fled, Moreland jumped fences and tossed narcotics along the way.  (*Id.*)  A K9 officer was deployed but was unable to continue the pursuit.  (*Id.*)  A probable cause search of the vehicle was conducted.  (*Id.*)  Officers recovered a loaded CZ-10 firearm with a chambered round and a large bag of powder.  (*Id.*)  The narcotics Moreland discarded in the open field were also recovered.  (Doc. 42-23 at ¶¶ 114, 115.)  Two cell phones were also recovered from the vehicle.  (*Id.* at ¶ 116.)  The next day, a third cell phone was recovered near where Moreland's jacket was recovered.  (*Id.* at ¶¶ 115, 117.)

Moreland does not challenge the stated basis for the traffic stop – that he was speeding and had illegally tinted windows.  (Doc. 42-20 at 572.)  Nor does he challenge the description of him shedding contraband while fleeing from police, namely the plastic bag of pills.  Instead, to Moreland, allowing evidence obtained in connection with the attempted traffic stop will violate his Fourth Amendment rights because (1) the search warrant affidavits pre-dating the traffic stop all lacked probable cause, and (2) the officers impermissibly targeted him and forced his "panic" and flight.  (*See* Doc. 40 at 153-55; Doc. 43 at 703-05.)

First, that the officers may have had another reason to pull Moreland over, that being to further a drug trafficking investigation, is of no moment.  "So long as the officer has probable cause to be believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment."  *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (citation omitted); *see also United States v. Burton*, 334 F.3d 514, 516 (6th

Cir. 2003) ("The Fourth Amendment . . . permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop.") (citing *Whren*, 517 at 812-13).

Second, each challenged search warrant was supported by probable cause.

Third, no seizure occurred.  Moreland did not succumb to the officers' show of authority; he successfully evaded them.  As he fled, Moreland discarded evidence the officers were authorized to collect and, importantly, consider in their assessment of probable cause to search the abandoned vehicle.  *Hodari D.*, 499 U.S. at 626-29.

Fourth, even if the Court limited its probable cause assessment to the information available to just those officers on scene, the vehicle search was lawful.  The "automobile exception" permits a warrantless search of a vehicle "if the officers have probable cause to believe that the vehicle contains evidence of a crime."  *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)); *see also United States v. Alexander*, 954 F.3d 910, 917 (holding combination of the presence of methamphetamine found on defendant and visible money in his vehicle "would have established probable cause necessary to conduct a search of the vehicle pursuant to the automobile exception").  Moreland ran away while also discarding pills.  Tossing away controlled substances while fleeing presents probable cause to search the abandoned vehicle.  *See Hodari D.*, 499 U.S. 629; *Caldwell*, 2000 WL 1888682, at *5 (contents of garbage bag defendant abandoned while evading officers provided probable cause to search for evidence of methamphetamine production); *see also United States v. Foster*, 65 F. App'x 41, 46 (6th Cir. 2003) (when individual flees from vehicle to evade police, vehicle is abandoned and any reasonable expectation of privacy is extinguished).

Finally, Moreland's claim that flight cannot support a probable cause determination if such flight was provoked by law enforcement is premised on a mischaracterization of the traffic stop. (*See* Doc. 40 at 155-56.) The uncontested police report plainly states that the attempted a traffic stop was due to speeding and illegally tinted windows. (Doc. 42-20 at 572.) There is no lack of clarity as to why the officers attempted to pull Moreland over. (*See* Doc. 40 at 155 (acknowledging "Moreland was driving badly").)

Additionally, Moreland's description of "panic" does not sound in any Fourth Amendment violation when he twice pulled away from the officers (both in marked cars with lights and sirens operating) rather than come to a complete stop. (Doc. 42-20 at 572.) As he stepped out of the Vehicle, Moreland looked at the officers, said "y'all crazy," and took off running. (*Id.*) If the officers boxed Moreland in, it was because he twice refused to stop. A person cannot refuse to comply with lawful police orders and then claim a Fourth Amendment violation when the officers must apprehend them to gain compliance. *See United States v. Jeter*, 721 F.3d 746, 753-55 (6th Cir. 2013) (no Fourth Amendment violation where officers did not use fraud to provoke defendant's flight and defendant did not flee due to fear of imminent harm).

C. **Search warrant for East 72nd Street Address[6]**

The affidavit in support of this search warrant was the other affidavit appended to Moreland's reply in support of his Motion to Suppress. (*See* Doc. 43-2; *see also* Doc. 42-23.) To Moreland, this affidavit lacks probable cause because it includes the same information for the GPS affidavits. (Doc. 40 at 153, 156; Doc. 43 at 703-05.) But what Moreland does not address,

---

[6] After the attempted traffic stop, the government sought and obtained search warrants for telephones found in Moreland's abandoned vehicle and telephones obtained after the search at Moreland's East 72nd Street address. Moreland does not state a specific challenge to these outside of the evidence obtained being excludable as fruits of the poisonous tree. These warrants are supported by probable cause, and Moreland's exclusion argument is addressed below.

again, is the totality of the information provided. When TFO Berta submitted this affidavit, he properly included additional information from covert cameras, a trash pull that resulted in the collection of a plastic bag with cocaine residue, and the information and officers obtained during the attempted traffic stop. (Doc. 42-23 at ¶¶ 103-105, 109-110, 111-131.)

The affidavit needed to contain facts sufficient to indicate, by a fair probability, that evidence of a crime will be obtained by searching the East 72nd Street address. *Bowling*, 900 F.2d at 930. Given the totality of the information provided in the affidavit, there was a sufficient recitation of facts demonstrating that evidence of criminal activity would probably be found in the place to be searched.

Having reviewed the totality of the information provided in this search warrant affidavit, it is clear the search warrant for Moreland's East 72nd Street residence was supported by probable cause.

### D. Good Faith

Even if the affidavits did not establish probable cause to obtain GPS information or search the premises at East 72nd Street, the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), applies. This exception is applicable in cases where "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (citing *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc). "Minimal nexus" can be satisfied "by the officer's reliance on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices." *Id.* (citing *United States v. Schulz*, 14 F.3d 1093, 1098 (6th Cir. 1994)).

TFO Berta presented over twenty affidavits to three different magistrate judges.  All were approved.  All were supported by probable cause.  TFO Berta's affidavits explained his training and experience investigating drug trafficking activity, including "how controlled substances are cultivated, manufacture[d], processed, packaged[d], distributed, sold and used," the "use of coded language to conceal [] illegal activities," "that there are few legitimate reasons for individuals to utilize pill presses," and that dealers order Firmapress in the names of  fictitious entities to conceal the illegal nature of the transaction.  (*See, e.g.*, Doc. 42-3at ¶¶ 5, 11, 13.)  Specific to Moreland, the affidavits included Moreland's substantial Firmapress order, that his business was not one that required Firmapress, short term activity at the East 72nd Street location, conduct consistent with hand-to-hand transactions at East 72nd Street and other locations, and countersurveillance measures.  (*Id.* at ¶¶ 10-17, 26-28, 34-48, 52, 56, 57.)

For the search of the residence on East 72nd Street, the affidavit contained even more information.[7]  (*See* Doc. 42-23.)  Moreland lived at East 72nd Street but maintained another place at East 131st Street.  He was seen going back and forth between locations, sometimes taking routes that suggested efforts to evade law enforcement.  (*Id.* at ¶¶ 76-102.)  Notably, the East 131st Street location did not have running water.  (*Id.* at ¶ 96.)  Moreland was seen at the East 131st Street location, via direct surveillance and a covert camera, carrying weighted bags.  (*Id.* at ¶¶ 94, 97, 104.)  On one occasion, he was seen coming out of the location, grabbing water and rags from his car, and washing his hands in the driveway.  (*Id.* at ¶ 96.)  TFO Berta stated this

---

[7] This affidavit also contained observations from before and during the attempted traffic stop as well as the subsequent search of Moreland's abandoned Vehicle.  (*See* Doc. 42-23.)  As explained below, that information was properly included in the affidavit and provided additional information to support probable cause.

need to wash was consistent with using Firmapress and a pill press because the process of pressing pills creates residue that must be washed off. (*Id.*)

In reviewing the affidavits, each contained sufficient information that any officer would reasonably and in good faith rely on in executing the search warrants. *See, e.g.*, *Carpenter*, 360 F.3d at 595-97 (good-faith exception applied to affidavit stating merely that aerial surveillance connected a road to an adjacent marijuana field).

### E. Fruit of the Poisonous Tree

Moreland seeks exclusion of any and all evidence seized after the initial search warrant as being fruit of the poisonous tree. (Doc. 40 at 155-56.) Evidence is not properly characterized as "fruit of the poisonous tree" if "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstances so as to remove the 'taint' imposed upon the evidence by the original illegality." *United States v. Crews*, 445 U.S. 463, 471, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980).

Here, the intervening events are several. Officers obtained covert camera footage and observed Moreland's activities at East 131st Steet location, namely him carrying heavy bags and stepping outside to access water for washing. (Doc. 42-23 at ¶¶ 96, 102-04.) This is consistent with using Firmapress to create illicit pills. Officers conducted a trash pull at the East 72nd Street address that confirmed cocaine residue was discarded from the residence. (*Id.* at ¶¶ 109-10.) This demonstrates that cocaine had been inside Moreland's home. Then, the traffic stop. (*Id.* at ¶¶ 111-18.) Moreland tossed away a bag of pills and abandoned the Vehicle , which contained a firearm, narcotics, and cell phones. (*Id.*) Drugs, firearms, and multiple cellular phones are hallmarks of the drug trade. *See United States v. Johnson*, 737 F.3d 444, 447-48 (6th Cir. 2013). All of this information was presented in support of the search warrant application for Moreland's East 72nd Street residence.

Accordingly, Moreland's "fruit of the poisonous tree" argument fails for two reasons – all search warrants were supported by probable cause and, even if they were not, intervening events removed any "taint" that could attach.

## III.    CONCLUSION

For the reasons stated herein, the Motion to Suppress (Doc. 40) is DENIED in full.


**IT IS SO ORDERED.**

**Date:**  March 6, 2026

_____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE